(April 16, 1992)

■ ALBERT APARTMENT CORPORATION et al., Respondents, v CORBO COMPANY et al., Appellants.—Order, Supreme Court, New York County (Edward H. Lehner, J.), entered May 29, 1991, which denied defendants' motion pursuant to CPLR 3211 (a) (7) to dismiss the fourth cause of action in the complaint, unanimously reversed, on the law, with costs, and the motion is granted.

As pertinent to this appeal, the plaintiffs, Albert Apartment Corporation and its shareholders, allege fraud in their fourth cause of action based on alleged misrepresentations in the offering plan of a cooperative conversion to the effect that certain tax exemption and abatement benefits would be available in specified amounts and for a specified period of time pursuant to Administrative Code of the City of New York § J51-2.5, commonly known as "J-51 benefits".

The essential elements of a cause of action for common-law fraud include the representation of a material existing fact, falsity, scienter, reliance and injury *(Lanzi v Brooks,* 54 AD2d 1057, *affd* 43 NY2d 778; *Vermeer Owners v Guterman,* 78 NY2d 1114). The central issues presented on this appeal are whether the plaintiffs pleaded that the defendants misrepre-

sented a material fact, or expressed an unactionable opinion or prediction of a future event; and whether defendants intended to induce reliance on what they knew to be a false representation of fact. We have recently held that speculation and expressions of hope for the future do not constitute actionable representations of fact *(Quasha v American Natural Beverage Corp.,* 171 AD2d 537). Moreover, a party does not make an actionable representation of fact when predicting a future event with no knowledge of whether or not the event may occur *(Lloyd I. Isler, P. C. v Sutter,* 160 AD2d 609).

The defendants do not dispute that the City of New York repeatedly increased the real property tax rate and assessed value of the plaintiffs' building in the late 1980's, and they do not dispute that these increases had a concomitant effect on the availability of J-51 benefits. Rather, the defendants point to several portions of the record which demonstrate that any estimates of the duration and amount of J-51 benefits were expressly contingent upon the continued validity of specifically delineated assumptions, including external variables that were neither within the defendants' control nor their ability to predict with certainty, such as the future real estate tax rate and future assessed valuation of the building in question. For instance, the conversion plan addressed J-51 benefits as one of four topics under the heading "SPECIAL RISKS":

"Real Estate Tax Benefits:

"The Property currently does not pay any real estate taxes by virtue of its receiving tax exemption and tax abatement benefits pursuant to Section J51-2.5 of the Administrative Code of the City of New York. This situation is expected to continue during the cooperative's first year of operation and for several years thereafter. However, based on certain assumptions and projections, in or about tax year 1989/90, the Property will begin to pay some real estate taxes. Moreover, in or about tax year 1993/94 the Property will be paying full real estate taxes. Based on certain assumptions, the imposition of full taxes will increase the Maintenance Charges of each Tenant-Shareholder by approximately $13.00 per share. However, most of this increase will be deductible for income tax purposes by Tenant-Shareholders."

In the body of the plan, the "estimates" of future taxes on the building were expressly conditioned on the following assumptions and projections:

"Assuming that:

"(i) the 1983/84 assessment is not modified on a subsequent date;

"(ii) the actual assessment of $5,090,000 does not increase throughout the period projected herein, but continues to be phased in through 1986/87 by equal installments of $68,000 and by $18,000 in tax year 1987/88;

"(iii) the 1983/84 actual exemption of $3,345,800 continues each year through 1988/89;

"(iv) the abatement continues to be applied as described herein; and

"(v) the tax rate remains at $9.057 for each $100.00 of assessed valuation;

"the following estimates can be projected:

"(a) the Property will not pay any real estate taxes until tax year 1989/90;

"(b) in 1989/90 and for each tax year thereafter until and including 1991/92 the Property will annually pay approximately $235,518 in real estate taxes;

"(c) in tax year 1992/93, the Property will pay approximately $269,139 in real estate taxes; and

"(d) in tax year 1993/94, the Property will pay approximately $461,001 in real estate taxes."

Moreover, the plan clearly set forth the following cautions: "No assurance can be given that the assessed valuations will continue to be as projected herein after tax year 1983/84, or that they will remain constant for the period discussed herein. Similarly, no assurance or guaranty can be made that the tax rate will remain at $9.057 per $100.00 of assessed valuation. In the event of an increase in either the assessed valuation or the tax rate, actual taxes due will be increased. Also, no assurance can be given that the tax benefits as described will not be adversely affected by subsequent changes in either the applicable legislation governing the § J51 program, or rules and regulations promulgated pursuant to said section. Nor does the Sponsor represent that existing § J51 benefits will not be adversely affected by municipal action or review of said benefits, although no such action or review is pending at this time nor has the Sponsor reason to believe that such action or review is contemplated or expected in the future."

Other documents upon which plaintiffs rely as evidence of the defendants' alleged fraud are similarly replete with assumptions as to future tax rates and assessments, and there is no reason to detail them here. It is clear that measured

against the pleading requirements of a common-law fraud cause of action, as set forth *supra,* the plaintiffs have failed to meet their burden. Accordingly, the defendants' motion to dismiss the fourth cause of action in the complaint should have been, and is hereby, granted. Concur—Murphy, P. J., Carro, Ellerin, Asch and Smith, JJ.