**Jacob SHAPIRO, on behalf of himself and all others similarly situated, Plaintiff–Appellant,**

v.

**DUN & BRADSTREET RECEIVABLE MANAGEMENT SERVICES, INC., Defendant–Appellee.**

**Docket No. 02–7963.**

United States Court of Appeals, Second Circuit.

March 7, 2003.

Lawrence Katz, Katz & Kleinman, Uniondale, N.Y., for Appellant.

Lisa Martinez Wolmart, Pitney, Hardin, Kipp & Szuch, L.L.P. (Helen A. Nau, on the brief), New York, N.Y., for Appellee.

Present: STRAUB, KATZMANN and RAGGI, Circuit Judges.

### SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.

Plaintiff–Appellant Jacob Shapiro ("Shapiro") appeals from the District Court's July 18, 2002 dismissal of his complaint against Defendant–Appellee Dun & Bradstreet Receivable Management Services, Inc. ("D & B") pursuant to Fed.R.Civ.P. 12(b)(6) and its denial of Shapiro's cross-motion for partial summary judgment. Shapiro, who styles his complaint as a class action, alleges that D & B violated the validation notice requirements of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692(g)(a)(3)-(4) & § 1692e(10), when it mailed him a debt-collection letter. Shapiro does not challenge the sufficiency of the validation notice itself, but argues that other language in the letter overshadows or contradicts the notice. We affirm for substantially the reasons stated by the District Court.

The District Court correctly applied the objective "least sophisticated consumer" standard in analyzing Shapiro's claim that certain language in the letter was confusing and likely to cause a debtor to forego his statutory right to validate the debt. *See Russell v. Equifax A.R.S.,* 74 F.3d 30, 34 (2d Cir.1996). The question of whether language in a debt-collection letter overshadows or contradicts other language in an impermissible fashion is a question of

law we review *de novo*. *See id.* at 33. "A notice is overshadowing or contradictory if it would make the least sophisticated consumer uncertain as to her rights" or is "reasonably susceptible to an inaccurate reading." *Id.* at 35; *see also Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir.1998). Yet, "in crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness." *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir.1993) (noting that debt collectors are properly protected against "liability for bizarre or idiosyncratic interpretations of collection notices").

■ With respect to Shapiro's argument that D & B's letter violates the FDCPA by encouraging the debtor to dispute the debt with the creditor, rather than the debt-collector, we agree with the District Court that the letter's language is not susceptible to such a misinterpretation. At its conclusion, the letter states: "If there are any questions regarding this account, or if you wish to make payment arrangements, please contact [the creditor] directly at [800–number]. Should you wish to dispute this account, please refer to the notice on the reverse side of this letter." Farther down the page, in larger typeface consisting of all-capital letters, appear the words "NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION." D & B's validation notice informing the debtor of his right to dispute the debt is contained on the reverse side of the letter. We agree that the instruction to contact the creditor does not overshadow or contradict the validation notice; rather, the letter clearly conveys to the debtor that he may *either* contact his creditor for payment purposes or with questions about the account *or* contact D & B to dispute the debt. *See Renick v. Dun & Bradstreet Receivable Management Servs.*, 290 F.3d 1055, 1057 (9th Cir.2002); *see also Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d

292, 309–310 (2d Cir.2003) ("Where a validation notice plainly specifies that FDCPA contact must be in writing, and nothing on the front of the letter suggests in any way that an instruction to call was intended to override the requirements outlined in the validation notice, we do not believe that a reasonable consumer ... could be misled into thinking that the clear obligation to request validation in writing was somehow modified by ... the invitation to call if appropriate....").

Shapiro further disputes the inclusion of a sentence in the second paragraph of the letter that reads: "If you have already remitted this payment, thank you, and you can disregard this letter." Shapiro argues that this language violates the FDCPA because a debt-collector cannot satisfy the statute's requirements by "giving notice in a letter that simultaneously instructs the consumer to ignore the letter."

■ As did the District Court, we conclude that the disputed sentence is not reasonably likely to cause a debtor to forego her statutory right to dispute the debt. The common sense meaning of the disputed phrase is that a debtor who has "already remitted this payment" need not remit *another* payment, and is likely intended for the scenario in which a debtor has recently sent payment. In any event, Shapiro's argument that this language is likely to lull or mislead a debtor who wishes to dispute the debt into inaction fails to persuade.

In *McStay v. I.C. System, Inc.*, 308 F.3d 188 (2d Cir.2002), this Court reviewed a debtor's claim that a collection letter was ambiguous as to whether the 30–day time period for disputing the debt ran from the date the debtor received the letter, as required by statute, or from the date of the letter itself. While the *McStay* court agreed that language on the front of the

letter was ambiguous on this point, it proceeded to analyze the collection letter's provisions as a whole, which included a bolded instruction in all-capital letters to see the reverse side of the letter for important information. *Id.* at 191. Holding that "when a prominent instruction in the body of the letter warns that there is important information on the reverse side, a reasonable reader, even if unsophisticated, would turn the paper over and read the back," *id.,* the court concluded that any ambiguity in the letter's terms "dissipate[d] when read in conjunction" with the remainder of the letter, including the validation notice contained on the reverse side. *Id.; see also Miller,* 321 F.3d at 309–310 (concluding that repeated instructions to review validation notice were not overshadowed by other language in letter); *Clomon,* 988 F.2d at 1319–20 (observing that "courts have held that even the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care").

Similarly, even if we assume the statement that the debtor could "disregard this letter" if payment had been remitted was somehow at odds with the validation notice, when read as a whole, the letter is not reasonably susceptible to misinterpretation or likely to cause a debtor to misunderstand his rights. As described above, the letter goes on to state that if the debtor wishes to dispute the debt, he should see the notice on the reverse side. An instruction appears farther down the page, in larger font and all-capital letters, to "SEE REVERSE SIDE FOR IMPORTANT INFORMATION." D & B informs the debtor on the reverse side of the letter of his validation rights, which the debtor can exercise by contacting D & B. Accordingly, under the principles outlined in *McStay,* we conclude that even an unsophisticated

debtor would understand that he had a right to dispute the debt, whether he had paid his bill or not, and how to go about exercising that right.

We have examined all of Shapiro's remaining contentions and find them to be without merit. For the reasons set forth above, the judgment of the District Court is hereby AFFIRMED.